UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

New Cingular Wireless PCS, LLC,
    Plaintiff

    v.                                   Civil No.09-cv-399-SM
                                         Opinion No. 2010 DNH 162
Town of Greenfield, New Hampshire;
and Zoning Board of Adjustment of
the Town of Greenfield,
    Defendants

**O R D E R**

The named plaintiff, New Cingular Wireless PCS, LLC, is
wholly owned by the New AT&T, and prefers to be called "AT&T."
To fill a gap in cellular telephone coverage, AT&T proposes to
construct a cell tower in Greenfield, New Hampshire.  After being
denied an area variance by the Greenfield Zoning Board of
Adjustment ("ZBA"), AT&T sued under the Telecommunications Act of
1996, 47 U.S.C. § 151 et seq. (Counts I and II) and section 677:4
of the New Hampshire Revised Statutes Annotated (Count III).

AT&T argues that the ZBA's decision to deny a variance is
not supported by substantial evidence (Count I), and that the
decision results in an effective prohibition on the extension of
personal wireless services in an identified coverage gap (Count
II).  Before the court are cross motions for summary judgment on
Count I.  Those motions were argued at a hearing on August 9,

2010.  For the reasons given, AT&T's motion for summary judgment is granted and defendants' summary judgment motion is denied.

## Summary Judgment Standard

Summary judgment should be granted when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor."  Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

## Background

AT&T seeks to construct a cell tower and associated facilities on a 257-acre parcel at 515 Sawmill Road in Greenfield.  That parcel is located in Greenfield's General

Residence District.  In July, 2009, the Greenfield Planning Board conducted a site plan review and approved AT&T's project, subject to the following relevant condition: "The applicant receives a variance(s) from the ZBA for the height above the tree canopy." (Certified Record (hereinafter "R.") at 293.)

In an application for a special exception and two variances, submitted to the Greenfield ZBA, AT&T proposed to construct "[a] 100' high, galvanized steel monopole within a 50' x 50' fenced equipment area" and associated accessories.  (R. at 4.)  AT&T described the proposed tower site in the following way:

> [O]pen fields occupy the area to the south and west of the proposed Facility site within a fifty foot (50') radius of the proposed perimeter fence/security barrier.  Property to the immediate north and east within a fifty foot (50') radius of the proposed perimeter fence/security barrier is largely comprised of low-lying scrub vegetation.

(R. at 15.)  The proposed tower location is 823 feet from the nearest property line, 1399 feet from the next closest property line, and more than 2000 feet from each of the other two property lines.  It is 1952 feet from the nearest public road and 474 feet from the nearest habitable dwelling, which is located on the same parcel as the proposed tower.

The proposed tower is necessary, AT&T says, to fill a gap in its wireless telephone service coverage.[1]  A radio-frequency study prepared for the Greenfield Planning Board identifies a 3.6-mile coverage gap along Route 31 (Sawmill Road).  (R. at 297.)  The report concludes that the identified gap could be diminished to approximately several hundred feet by an antenna mounted on a 100-foot tower at the proposed location.  (R. at 298.)  On a 100-foot tower, the topmost antenna would have a center-line height of approximately ninety-seven feet.  (R. at 298.)  The proposed tower could accommodate a second provider at approximately eighty-seven feet and a third provider at approximately seventy-seven feet.  (R. at 299.)

The ZBA granted AT&T a special exception and determined that one of the requested variances was not necessary, but denied the other requested variance.  In granting the special exception, the ZBA

> consider[ed] such factors as [the proposed tower's] proximity to residential buildings, the impact on the value of the surrounding properties, its affect on the character and natural features of the site, the number and frequency of employees visiting the site, nuisances it may create such as interference with neighborhood television, telephone or radio reception plus any comments of abutters.

---

[1] Defendants do not contest the existence of a coverage gap.

GREENFIELD, N.H., ZONING ORD. (hereinafter "GZO") § V(1)(C)
(emphasis added).  By granting the special exception, the ZBA
necessarily determined that the proposed tower would not have a
significantly adverse impact on either the value of surrounding
properties or the character of the site.

That section of the Greenfield Zoning Ordinance devoted to
personal wireless facilities includes a requirement that
"[g]round mounted personal wireless service facilities shall not
project higher than twenty (20) feet above the average tree
canopy height within a fifty (50) foot radius of the mount,
security barrier, or designated clear area for access to
equipment, whichever is greater."  GZO § V(2)(E)(1)(d).  AT&T
sought a variance from the height restriction because its
proposed tower site is surrounded by open fields and scrub
vegetation, so absent a variance, a useful tower could not be
erected at the site.

At its September 2, 2009, deliberative session, the ZBA
discussed AT&T's request for a variance.  ZBA member Kevin
O'Connell noted the obvious:  "since the area of the tower is a
field, the height restriction can't be enforced or the tower
would only be about 20' off the ground."  (R. at 220.)  At a

deliberative session on September 9, the following exchange took place:

> Craig [Pettigrew] states we already approved the special exception but asks what the average tree height is, has the height . . . been established?
>
> John [Gryval] explains the Planning board never established tree height, but that they are looking for a variance from it.  If the Board denies the variance the plan will go back to the Planning board and they'll have to determine tree height.
>
> Craig states we've been using 60-65' for an estimate. . . .
>
> Kevin talks of last week's discussion of tree heights in the area, and the boards lack of knowledge as to the heights.

(R. at 221.)


In its Notice of Decision, the ZBA determined that AT&T failed to satisfy any of the five requirements for obtaining a variance.  It concluded by stating: "The Board finds that the applicant MUST if they choose to continue with the proposed project, construct a facility that does not project higher than 20' above the average tree canopy height." (Id. at 3.)  Given the type of vegetation at the site, a literal reading of the Notice of Decision would suggest that the ZBA denied AT&T permission to build a tower any taller than about 21 feet, i.e., twenty feet plus the average height of the scrub vegetation surrounding the tower location.  But, at the hearing before this

6

court, it became clear that while the ZBA denied AT&T a variance
for a 100-foot tower, it actually granted a variance for an
eighty-foot tower — by deeming the average tree canopy height
within fifty feet of the tower to be sixty feet.  Given the ZBA's
litigation position, the Notice of Decision will be construed as
granting a variance, but only for an eighty-foot tower.

Evidence of the coverage that would be provided by an
eighty-foot tower is somewhat thin.  The radio-frequency coverage
report prepared for the Town's own Planning Board suggests that
three antennas on a 100-foot tower (with center-line heights of
ninety-seven, eighty-seven, and seventy-seven feet) would all
provide some coverage,[2] and indicates that "propagation for [the
lowest] provider might not be adversely impacted at a slightly
lower height."  (R. at 299.)  At the ZBA's August 19 public
session, the following exchange took place between ZBA member
John Gryval and Dan Goulet, AT&T's radio-frequency engineer:

> John asks Dan Goulet if there is a way to estimate
> coverage of an 80' tower.
>
> Dan Goulet replies there is but that would reduce
> coverage in-car and in-house.
>
> Dan Dineen [another ZBA member] asks if they could
> reach the center with an additional smaller tower.

---

[2] On an eighty-foot tower, the topmost antenna would have a
center-line height of seventy-seven feet.

> Dan Goulet replies, "Yes" but then they'd need three
> towers instead of two.  "We do reach the center at
> 100', but would have to do an RF [radio-frequency]
> study for 80'."

(R. at 216-17.)  At the ZBA's September 9 deliberative session,

AT&T attempted to present coverage maps for an eighty-foot tower,

but the ZBA declined to consider them.[3]  AT&T did, however,

attach those coverage maps to its motion for a rehearing, which

the ZBA denied.  AT&T characterizes those coverage maps as

showing that if it were limited to an eighty-foot tower at the

Sawmill Road location, as opposed to a 100-foot tower, the

coverage gap would increase from .16 miles to .60 miles.  (Pl.'s

Mem. of Law (document no. 13-1), at 5.)  Defendants do not

contest that characterization, but also offer their own, stating

that the "coverage maps show that an eighty foot tower would

still provide some wireless coverage at the site."  (Defs.' Mem.

of Law (document no. 15-1), at 6.)


## Discussion

Count I of AT&T's complaint asserts that the ZBA's decision

to deny a variance for a 100-foot tower was not supported by

substantial evidence.  Both parties move for summary judgment on

that issue.

---

[3] It did so after declining to accept a set of photographs
from a party opposing the tower.

The court of appeals for this circuit has explained that:

> [T]hough state and local governments have the power "to deny . . . request[s] to place, construct, or modify personal wireless service facilities," their decisions must be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).  This balance strengthens the decision making authority of local zoning boards, while protecting wireless service providers from unsupported decisions that stymie the expansion of telecommunication technology.

ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (citing Brehmer v. Planning Bd., 238 F.3d 117, 122 (1st Cir. 2001)).  "In this circuit, the [Telecommunications Act] is understood to impose two requirements on a local land use board. First, the board must issue a written decision, and second, the board's decision must be supported by substantial evidence in a written record."  ATC Realty, LLC v. Town of Sutton, No. CV-01-046-M, 2002 WL 467132, at *5 (D.N.H. Mar. 7, 2002).


To satisfy the written-decision requirement, a board's "written denial must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." Sw. Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 60 (1st Cir. 2001) (citing Sprint Spectrum L.P. v. Town of N. Stonington, 12 F. Supp. 2d 247, 252 (D. Conn. 1998)).  "[A] written denial, containing explanations, serves the additional purpose of

9

providing an unsuccessful applicant with information that will assist him or her in crafting an acceptable subsequent application." Town of Sutton, 2002 WL 467132, at *6.

"Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion.' " Town of Kingston, 303 F.3d at 94 (quoting Cellular Tel. Co. v. Zoning Bd. of Adjustment, 197 F.3d 64, 71 (3d Cir. 1999)). A local land-use board's "decision will thus withstand [judicial] scrutiny if it is 'supported by . . . more than a scintilla of evidence.' " Town of Kingston, 303 F.3d at 94 (citing Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir. 1999); NLRB v. Grand Canyon Mining Co., 116 F.3d 1039, 1044 (4th Cir. 1997)).

AT&T challenges the ZBA's decision to deny a variance for a 100-foot tower. In New Hampshire:

> To obtain a variance, a landowner bears the burden of showing that: (1) the variance will not be contrary to the public interest; (2) special conditions exist such that literal enforcement of the ordinance results in unnecessary hardship; (3) the variance is consistent with the spirit of the ordinance; (4) substantial justice is done; and (5) granting the variance will not diminish the value of surrounding properties.

Farrar v. City of Keene, 158 N.H. 684, 688 (2009) (citing
Harrington v. Town of Warner, 152 N.H. 74, 77 (2005)); see also
N.H. Rev. Stat. Ann. § 674:33, I(b).

A. Public Interest & Spirit of the Ordinance

    "The requirement that the variance not be contrary to the
public interest is related to the requirement that the variance
be consistent with the spirit of the ordinance."  Farrar, 158
N.H. at 691 (quoting Malachy Glen Assocs. v. Town of Chichester,
155 N.H. 102, 105 (2007)).  "A variance is contrary to the public
interest or injurious to the public rights of others if it
'unduly, and in a marked degree conflict[s] with the ordinance
such that it violates the ordinance's basic zoning objectives.' "
Farrar, 158 N.H. at 691 (quoting Chester Rod & Gun Club, Inc. v.
Town of Chester, 152 N.H. 577, 581 (2005)) (emphasis added).


    To explain its determination that the requested variance
would be contrary to the public interest, the ZBA wrote:


        While the Board consented that a potential exists for
        individual interest(s) to be served as a result of the
        approval of this variance public interest in general in
        the form of protection of visual features of Greenfield
        is well recorded and noted within the ordinance and
        must be considered in any decision.  Since the
        ordinance allows for an intrusion or visual impact
        resulting from a structure extending above the canopy
        height not to exceed 20' is acceptable [sic], the Board
        finds that any additional intrusion of the visual
        impact would be contrary to public interest.

11

(Compl., Ex. 1, at 1-2.)   In essence, the ZBA seems to have
determined that AT&T's proposed tower did not qualify for a
variance from the height restriction as requested (i.e., 100
feet), because that height would violate the very restriction
from which AT&T sought relief (eighty feet).   In other words, the
ZBA seemingly determined that a variance for a 100-foot tower was
not in the public interest, because a 100-foot tower could not be
built without a variance from the de facto eighty-foot
limitation.

    Southwestern Bell requires the ZBA to give a sufficient
explanation for its denial, see 244 F.3d at 60, and the circular
reasoning offered by the ZBA falls short of the mark.   As the New
Hampshire Supreme Court explained in Malachy Glen, where the
plaintiff sought a variance from a wetlands ordinance, "the mere
fact that the project encroaches on the buffer, which is the
reason for the variance request, cannot be used by the ZBA to
deny the variance."   155 N.H. at 107; see also Chester Rod & Gun
Club, 152 N.H. at 581 (pointing out that any variance is
necessarily contrary to the ordinance from which a variance is
sought).   In addition, the ZBA incorrectly described AT&T's
proposed tower as serving an exclusively individual interest
rather than both private and public interests.   Cf. Daniels v.

12

Town of Londonderry, 157 N.H. 519, 529 (2008) ("A tower at this site would also serve the public interest in that it would alleviate a significant gap in coverage and would be used to provide service for at least two other wireless telecommunications companies to limit the need for any further towers.").  Because the ZBA's public-interest determination relies on circular reasoning and fails to recognize that enhanced cellular telephone service and co-location are decidedly in the public interest, the ZBA did not provide an adequate explanation for its determination that the variance AT&T sought was contrary to the public interest.

The Notice of Decision addressed the "spirit of the ordinance" in the following way:

> The Board finds that the spirit of the ordinance is well defined within its "purpose" Section V.1 "The purpose of this section is to establish regulations for telecommunications facilities so as to protect residential areas and lands [by] minimizing adverse impacts of towers".  Although the ordinance allows for an impact of sorts by allowing for ground mounted personal wireless facilities to project not higher than 20' above the average canopy height in this case the additional height goes beyond being compatible with visual features.  In that light the Board finds any additional height would not be within the spirit of the ordinance and would not meet the goals set out in the Town's Master Plan.

(Compl., Ex. 1, at 2 (emphasis added).)  That explanation plainly suffers from the same deficiencies as the explanation the ZBA

gave for its decision relative to the public-interest requirement.  The ZBA determined that the variance would violate the spirit of the ordinance because it violated the ordinance. That, of course, is not the correct test.  Beyond that, the ZBA failed to recognize that the provision of personal wireless services falls within both the public interest and the spirit of the Greenfield Zoning Ordinance.

To be sure, section V(1) of the ordinance provides that the purpose of the telecommunications portion of section V is "to protect residential areas and lands by minimizing adverse impacts of [telecommunications] towers."  But, protection from the adverse impacts of towers is not the only purpose of section V. Section V(2), pertaining to personal wireless service facilities – which includes the height restriction imposed on AT&T's proposed tower – describes a much broader purpose: "It is the express purpose of this Article to permit carriers to locate personal wireless service facilities within particular areas of the Town of Greenfield consistent with appropriate land use regulations that will insure compatibility with the visual and environmental features of the Town." (Emphasis added.)  Section V(2) also strongly encourages co-location.  Thus, the spirit of the ordinance is substantially broader than indicated in the

Notice of Decision, which renders the ZBA's determination on that requirement insufficient.

The relevant question is whether there is substantial evidence in the written record to support the ZBA's determination that an increase in tower height from eighty to 100 feet would "unduly, and in a marked degree conflict with the ordinance such that it violates the ordinance's basic zoning objectives." Farrar, 158 N.H. at 691 (citation and internal punctuation marks omitted).  There is not substantial evidence in the record to support that determination.

In this case, the appropriate "way to ascertain whether granting the [requested] variance would violate basic zoning objectives is to examine whether it would alter the essential character of the locality."  Farrar, 158 N.H. at 691 (citation omitted).  As a starting point for such an examination, it is important to bear in mind that an area variance, such as the one at issue here, "does not alter the character of the surrounding area as much as a use not permitted by the ordinance." Harrington, 152 N.H. at 78 (citing Bacon v. Town of Enfield, 150 N.H. 468, 477 (2004) (Duggan and Dalianis, JJ., concurring specially)).

The record evidence shows that AT&T proposes to locate its tower near the middle of a 257-acre parcel, more than 800 feet from the nearest lot line.  Evidence also shows that the tower would be seen from several vantage points, but in nearly every documented instance, all that would be visible is a small portion of the top of the tower extending above the treetops.  Given that the Greenfield Zoning Ordinance allows ground-mounted personal wireless service towers in all zoning districts to extend above the tree canopy, <u>see</u> GZO § V(2)(E)(1)(d), there is not substantial evidence to support a determination that the proposed tower would conflict with the ordinance "unduly, and in a marked degree," <u>Farrar</u>, 158 N.H. at 691, or "would alter the essential character of the locality," <u>id.</u>  That conclusion is buttressed by the fact that the ZBA granted AT&T a special exception which required a determination, under an arguably stricter standard, <u>see</u> <u>Harrington</u>, 152 N.H. at 78, that a 100-foot tower would not have a significantly adverse effect on the character and natural features of the site.  In sum, the ZBA's determination that the proposed tower would be contrary to the spirit of the zoning ordinance is not supported by substantial evidence in the record.

B. Unnecessary Hardship

At the time the ZBA considered AT&T's application, to satisfy the unnecessary hardship requirement, AT&T was required

to show that: "(1) an area variance is needed to enable the applicant's proposed use of the property given the special conditions of the property; and (2) the benefit sought by the applicant cannot be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance." Daniels, 157 N.H. at 526.

With respect to the first requirement for establishing unnecessary hardship, the ZBA determined: "The Board finds that the applicant can utilize the property as proposed by erecting a tower in accordance with and staying within the allowable height restriction and not exceeding the 20' limit above the average tree canopy height as defined in the ordinance." (Compl., Ex. 1, at 2.) Defendants contend that "[t]he board concluded that Plaintiff had not proven unnecessary hardship because substantial evidence shows that the Property is not unique for purposes of closing a significant gap in wireless coverage." (Defs. Mem. of Law (document no. 15-1), at 10.) In Daniels, the New Hampshire Supreme Court described the proper way to assess a property's special conditions, or uniqueness, when an applicant for a variance proposes to use the property as the site for a cell tower:

> When an application to build a wireless
> telecommunications tower is designed to fill a
> significant gap in coverage, the suitability of a

17

specific parcel of land for that purpose should be
considered for purposes of determining hardship.  The
fact that a proposed location is centrally located
within the gap, has the correct topography, or is of an
adequate size to effectively eliminate the gap in
coverage, are factors that may make it unique under the
umbrella of the TCA.

Id. at 527.


Here, neither the Notice of Decision nor defendants'

memorandum of law indicates either the source or the substance of

the "substantial evidence" that purportedly underpins the ZBA's

determination that the Sawmill Road property is not unique in the

context of closing a recognized gap in cell phone coverage.

Moreover, while defendants' memorandum of law mentions

uniqueness, albeit incompletely, the Notice of Decision does not

discuss the uniqueness factor at all.  In any event, under the

Daniels standard, AT&T adequately demonstrated uniqueness by

showing that the Sawmill Road property is located within the

coverage gap and has the correct topography for a tower that

would largely eliminate the gap.  And, AT&T has shown that a 100-

foot tower would permit co-location – an express preference of

the zoning ordinance.  The record does not establish whether co-

location would be as available on an eighty-foot tower, and

without effective co-location, the record does not contain

substantial evidence supporting the ZBA's conclusion that AT&T

could "utilize the property as proposed" with an eighty-foot

tower.  Accordingly, the ZBA's determination on the first part of
the unnecessary-hardship requirement is not supported by
substantial evidence.

With respect to the second requirement for establishing
unnecessary hardship, the ZBA wrote: "The Board finds that the
applicant can achieve the results sought utilizing methods in
accordance specified within the ordinance.  These methods would
include but not be limited to additional and/or alternate sites
proposed within the limits and confines of the Greenfield Zoning
Ordinance."  (Id.)

Under New Hampshire law, the "second factor includes
consideration of whether the variance is necessary to avoid an
undue financial burden on the owner."  Boccia v. City of
Portsmouth, 151 N.H. 85, 92 (2004) (citing Bacon, 150 N.H. at
477-79 (Duggan and Dalianis, JJ., concurring specially);
Hertzberg v. Zoning Bd. of Adjustment, 721 A.2d 43, 49 (Pa.
1998); Halberstadt v. Borough of Nazareth, 687 A.2d 371, 373 (Pa.
1997); 3 K.H. Young, Anderson's American Law of Zoning § 20:16, at 165-
67 (Supp. 2003)).  That is, "in deciding whether to grant an area
variance, courts and zoning boards must examine the financial
burden on the landowner, including the relative expense of
available alternatives."  Boccia, 151 N.H. at 93 (citation

omitted).  To meet its burden, an applicant must make "a showing
of an adverse effect amounting to more than mere inconvenience."
Id.

     While the Notice of Decision suggests the use of additional
and/or alternate sites — meaning, as a practical matter,
construction of additional towers — the evidence of record
establishes that AT&T could adequately serve Greenfield with two
towers if the one at Sawmill Road is 100 feet tall, but would
need three towers if the one at Sawmill Road were only eighty
feet tall.  There is no evidence in the record suggesting that a
single tower located somewhere other than Sawmill Road and built
in compliance with the zoning ordinance would allow for co-
location, or allow AT&T to provide adequate coverage to
Greenfield with two towers.  Nor have defendants "point[ed] to
plausible alternatives that [AT&T] failed to properly evaluate."
Indus. Tower & Wireless, LLC v. Town of East Kingston, No. 07-cv-
399-PB, 2009 WL 2704579, at *8 (D.N.H. Aug. 28, 2009).  So, AT&T
demonstrated that without the variance, it would have to build
three towers in Greenfield rather than two, obviously at no small
incremental expense.

     Yet, in assessing unnecessary hardship, the ZBA did not
consider "whether an area variance is required to avoid an undue

financial burden on [AT&T], which includes examination of the relative expense of alternative methods." Malachy Glen, 155 N.H. at 108.  In Malachy Glen, the New Hampshire Supreme Court ruled that no reasonable trier of fact could find that it would not be an undue financial burden for an applicant to reduce the size of a proposed self-storage facility by more than fifty percent.  Id. That principle is applicable here as well.  The record does not contain substantial evidence to support a determination that AT&T failed to demonstrate undue financial hardship in this case, where denial of the requested variance would require construction of a third tower, an undeniably significant expense, easily avoided merely by adding twenty feet to the tower the ZBA already approved for the Sawmill Road site, with no appreciable adverse impact, particularly not with respect to visibility.

C. Substantial Justice

      "Perhaps the only guiding rule [as to the factor of 'substantial justice'] is that any loss to the individual that is not outweighed by a gain to the general public is an injustice." Farrar, 158 N.H. at 692 (quoting Malachy Glen, 155 N.H. at 109)). In explaining its determination "that substantial justice would not be done by granting this variance" (Compl., Ex. 1, at 2), the ZBA wrote:

> The loss to the applicant in this case does not
> outweigh the loss to the general public.  The applicant
> in this case is allowed to erect a tower to a height
> not greater than 20' above the average canopy height.
> the loss resulted by this height restriction to the
> applicant does not outweigh the gain to the general
> public by protecting the visual features as defined
> within the ordinance.

(Id.)  That determination is beset by the same infirmity as the

ZBA's decision on public interest; it fails to account for

substantial benefits the public will obtain if the tower is built

as proposed, and the reduced benefit if limited to eighty feet.


     The proposed tower would provide coverage in Greenfield with

two towers rather than three, would provide two spots for co-

location which, presumably, would diminish the need for two other

carriers to construct their own single-carrier towers to fill

coverage gaps,[4] and would effectively eliminate a substantial

coverage gap in Greenfield.  Thus, the correct substantial-

justice balancing test places the cost of building an extra tower

on one side, which is the loss to AT&T that results from the

ZBA's decision, while on the other side of the balance is the

gain to the general public.  That gain consists of the marginal

benefit of not seeing a twenty-foot section of a cell tower from

certain long-distance vantage points (and masked not only by the

---

[4] As noted, the Greenfield Zoning Ordinance contains
hortatory language encouraging co-location followed by technical
requirements that all but preclude it.

existing tree canopy but by the slope of the elevated terrain as well).  But even that "gain" would, of course, be substantially diminished by the resulting need to construct a third AT&T tower in Greenfield, as well as the loss of two co-location opportunities on the Sawmill Road tower.

When the question of substantial justice is viewed in the proper context, it is evident that the ZBA's determination is not supported by substantial record evidence.  An eighty-foot tower, as opposed to a 100-foot tower, at the Sawmill Road site would pose a substantial hardship for AT&T, as it would increase the number of towers necessary to cover Greenfield from two to three, cf. Malachy Glen, 155 N.H. at 108, while the benefit to the public would be negligible (indeed, the result would likely be considered a substantial detriment in the end).  Congress, of course, has given considerable discretion to local authorities to balance the various interests that collide during the process of selecting suitable locations for telecommunications facilities, see Town of Amherst, 173 F.3d at 15, but where, as here, local authorities have not properly identified or characterized the interests that must be balanced, their actions cross over the "outer limit" of acceptable decision making, see id.

D. Property Value

Finally, the ZBA determined that AT&T failed to show that the value of surrounding properties would not be diminished if the requested variance were to be granted:

> Although the Board was not unanimous concerning this issue in its earlier decision regarding a special exception allowing the erection of this cell tower in a residential district; the Board does find that the additional height of this tower extending above the 20 feet "Average Tree Canopy Height" allowed within the ordinance could have an adverse effect on surrounding property values.

(Compl., Ex. 1, at 1.)  AT&T presented the ZBA with a report from the Stanhope Group, LLC, concluding that "the [siting] of the proposed telecommunication tower would not result in diminution of value to the property in the subject neighborhood."  (R. at 255.)  The record before the ZBA included no evidence, opinion or otherwise, to the contrary and, in fact, the ZBA <u>granted</u> AT&T a special exception, which necessarily entailed a determination that the proposed tower would <u>not</u> have a sufficiently adverse impact on the values of surrounding properties.  Defendants say nothing about the property-value issue in their objection to AT&T's summary judgment motion.  Whether or not defendants have conceded the point, however, there is no evidence in the record to support a determination that AT&T's proposed tower could have an adverse effect on surrounding property values.

E. Summary

The ZBA determined that AT&T satisfied none of the five requirements for a variance established under New Hampshire law. Careful review of the record, however, demonstrates that the ZBA's determinations either fail to satisfy the written-decision requirement, or are not supported by an adequate quantum of evidence.  This is not a case in which the court has merely reweighed the evidence considered by local authorities and come to a different conclusion.  See Town of Kingston, 303 F.3d at 99 ("We must reiterate that our review is not focused on whether the Planning Board made the best or the correct decision.").  Rather, the fundamental problem with the ZBA's decision in this case is that it fails to put the correct evidence on the proper scales in the first instance.

Because the ZBA's Notice of Decision fails to meet the statutory standard described in Town of Kingston, 303 F.3d at 94, defendant violated the Telecommunications Act, which entitles AT&T to summary judgment on Count I.  See Town of Sutton, 2002 WL 467132, at *7.  "[I]n the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order . . . instructing the board to authorize construction."  Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 21-22 (1st Cir. 2002) (citing Brehmer, 238 F.3d at 120-22; Town of

Oyster Bay, 166 F.3d at 497.  This case falls comfortably within that majority; AT&T is entitled to an order instructing the ZBA to grant the requested variance and authorize construction of the 100-foot tower described in AT&T's application.

### Conclusion

For the reasons given, AT&T's motion for summary judgment on Count I (document no. 13) is granted and defendants' cross motion for summary judgment (document no. 15) is denied.  The ZBA shall promptly authorize construction of the subject tower as proposed.  Because AT&T has prevailed on Count I, the remaining two counts of AT&T's complaint are dismissed, without prejudice, as moot.  Accordingly, the clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 9, 2010

cc:  Douglas H. Wilkins, Esq.
     Matthew R. Serge, Esq.

26